IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**KENDRA M. BALSLEY,**

      **Plaintiff,**

v.                          Civil Action 2:20-cv-5620
                                   Judge Michael H. Watson
                                   Magistrate Judge Jolson

**COMMISSIONER OF**
**SOCIAL SECURITY,**

      **Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff Kendra M. Balsley brings this action under 42 U.S.C. § 405(g), seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). It is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 13) and **AFFIRM** the Commissioner's decision.

**I.    BACKGROUND**

Plaintiff filed her applications for DIB and SSI on November 8, 2017, alleging that she was disabled beginning October 22, 2014. (Tr. 510–17). After her applications were denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a hearing on November 21, 2019, before issuing a decision denying Plaintiff's applications on January 7, 2020. (Tr. 41–78, 19–39). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final for purposes of judicial review. (Tr. 1–7).

Plaintiff filed this action on October 28, 2020 (Doc. 1), and the Commissioner filed the administrative record on February 22, 2021 (Doc. 10). Shortly thereafter, Plaintiff filed her

Statement of Errors (Doc. 13), and the Commissioner filed his Opposition (Doc. 17). Because Plaintiff did not file a reply and the time for doing so has passed, the matter is ripe for review.

### A. Relevant Hearing Testimony

Plaintiff's statement of errors concerns only her narcolepsy. Accordingly, the Undersigned limits her discussion of the record to the same. The ALJ summarized Plaintiff's testimony and submitted statements:

> [Plaintiff] alleges that her ability to work is limited due to morphea, rheumatoid arthritis, narcolepsy, irritable bowel syndrome, asthma, and sleep apnea. [Plaintiff] reported that she is 5'6" and weighs 230 pounds (Ex. 3E/2). At the hearing, [she] testified that two main issues keep her from working, they are her narcolepsy and rheumatoid arthritis. [Plaintiff] testified that she has brain fog, sleepiness, and tiredness from her narcolepsy. She stated she was diagnosed with narcolepsy in 2013. The [Plaintiff] testified that she gets frustrated from her narcolepsy as she is unable to focus and has a hard time remembering things. She stated she is allowed to drive and does not fall asleep at the wheel. She testified that she takes medication which helps with her brain fog. Without her medication, she stated she could not function. As for her rheumatoid arthritis, [Plaintiff] testified that she has it in every joint in her body. Her hands and feet hurt her the most. She takes a medication that does help her. She stated that between her narcolepsy and rheumatoid arthritis she has a really hard time getting up in the morning and has to set several alarms to get up.

(Tr. 27–28).

### B. Relevant Medical History

The ALJ summarized Plaintiff's medical records pertaining to her narcolepsy as follows:

> [Plaintiff] also has narcolepsy without cataplexy. She treated with the Department of Sleep Medicine at OSU Wexner Medical Center (Ex. 1F).
>
> At a follow up in April 2015, [Plaintiff] reported that she was doing very well on Nuvigil. She was maintaining better alertness (Ex. 1F/3). She indicated that she did not really take naps (Ex. 1F/4). At that time her body mass index (BMI) was 43.47. Her exam was unremarkable. It was noted that she was doing fine on her medication if she was getting adequate sleep. She was to follow up in six months (Ex. 1F/5).
>
> At her next follow up in February 2016, [Plaintiff] reported that she was doing well. She was maintaining alertness on Nuvigil without side effects. She rarely took naps (Ex. 1F/6). Her BMI was 43.73 and her exam was unremarkable. It was noted she was doing well. She was to continue her current medication and follow up in six

> months (Ex. 1F/8). She was doing well again at her next follow up in August 2016 (Ex. 1F/9). In February 2017, [Plaintiff] reported being more stressed after getting a new house recently, as such she was more tired (Ex. 1F/12). Her BMI was 42.13 and the rest of her exam was unremarkable. She was to continue with Nuvigil. She was to be tested for obstructive sleep apnea (Ex. 1F/14). She was found to have moderate obstructive sleep apnea and was titrated to a CPAP (Ex. 1F/15). In June 2017, [Plaintiff] reported benefit and control of her sleep apnea symptoms on CPAP (Ex. 1F/17). In March 2019, she again reported benefit and control of her sleep apnea symptoms with CPAP use (Ex. 10F/20). In October 2019, she was continued on Nuvigil (Ex. 10F/5).
>
> In June 2016, [Plaintiff] established care with a primary care provider at PrimeCare of Southeastern Ohio. She reported several conditions including rheumatoid arthritis with positive rheumatoid factor, involving an unspecified cite, migraines, chronic left shoulder pain, narcolepsy, bilateral carpal tunnel syndrome, and chronic left shoulder pain, among others (Ex. 2F/34). At that time her exam was unremarkable except for some tenderness to the right of the umbilicus, over the bicipital tendon, and over the left pectoral muscle (Ex. 2F/37-38). She was referred for physical therapy. She was to start wearing braces for her carpal tunnel (Ex. 2F/39). At a follow up later that month, the [Plaintiff]'s exam was unremarkable. It was noted that she should continue using braces for her stable carpal tunnel (Ex. 2F/32).

(Tr. 29).

## C. The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirement through December 31, 2018, and that she had not engaged in substantial gainful employment since October 22, 2014, the alleged onset date of disability. (Tr. 25). The ALJ also determined that Plaintiff has the following severe impairments: inflammatory arthritis; carpal tunnel syndrome; a sleep-related breathing disorder; a disorder of the nervous system; obesity; migraines; dysfunction of a major joint, the right hip; depression; and anxiety. (*Id*). Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. (*Id*).

The ALJ assessed Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can frequently handle and finger

3

>bilaterally. She should avoid concentrated exposure to extreme heat defined as greater than 80 degrees Fahrenheit. She should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. She should never be exposed to hazardous machinery and unprotected heights. She is limited to simple and routine tasks, with no fast-paced production requirements.

(Tr. 27).

As for the allegations about the intensity, persistence, and limiting effects of Plaintiff's symptoms, the ALJ found that they were inconsistent with the record. (Tr. 28). "The record does not support the alleged loss of functioning to the extent alleged. After considering the evidence of record, the assessed RFC incorporates Plaintiff's limitations that are supported by the evidence." (*Id*.).

The ALJ determined that Plaintiff is unable to perform her past relevant work as a fast-food worker, cashier, and manager of fast-food services. (Tr. 32–33). Relying on the vocational expert's testimony, the ALJ further determined that given her age, education, work experience, and RFC, there are jobs which exist in significant numbers in the national economy that Plaintiff could perform, such as an electrical accessories assembler, an assembler of small products, and a production assembler. (Tr. 33–34). The ALJ found that the Plaintiff had not been under a disability, as defined in the Social Security Act, from October 22, 2014, through the date of his decision. (Tr. 34).

## II.    STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*

*v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

In her sole assignment of error, Plaintiff argues the ALJ failed to consider all the medical evidence and, specifically, failed to classify her narcolepsy as a medically determinable impairment. (Doc. 13 at 6–9). As a result, Plaintiff says, the ALJ failed to account for her narcolepsy in crafting her RFC. (*Id.*). The Commissioner responds: "The ALJ reasonably considered the evidence of Plaintiff's impairments, including evidence regarding her narcolepsy without cataplexy impairment, in finding that Plaintiff had the RFC to perform a reduced range of light work . . . ." (Doc. 17 at 4). The Commissioner further argues that any error in the ALJ's failure to explicitly classify the Plaintiff's narcolepsy is harmless because the ALJ properly considered this impairment in assessing the RFC. (*Id.* at 11). Ultimately, the Undersigned concludes that the ALJ did not err in his consideration of Plaintiff's narcolepsy without cataplexy, and substantial evidence supports Plaintiff's RFC.

*1. Step Two*

At step two, the ALJ must consider whether Plaintiff's alleged impairments constitute "medically determinable" impairments. *See* 20 C.F.R. §§ 416.920(a)(4)(ii); 404.1520(a)(4)(ii). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic

5

techniques[,]" and "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. Additionally, to be classified as "medically determinable" an impairment must meet the durational requirement, meaning, "it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. "If an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC." *Jones v. Comm'r of Soc. Sec.*, No. 3:15-cv-00428, 2017 WL 540923, at *6 (S.D. Ohio Feb. 10, 2017).

The finding of at least one severe impairment at step two is merely a threshold inquiry, the satisfaction of which prompts a full investigation into the limitations and restrictions imposed by all the individual's impairments. *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007). "And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'" *Id.* (quoting *Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *accord Smith v. Comm'r of Soc. Sec.*, No. 2:20-cv-1511, 2021 WL 972444, at *10 (S.D. Ohio Mar. 16, 2021) (finding no error despite ALJ's failure to designate plaintiff's neuropathy as a medically determinable or severe impairment where the ALJ discussed plaintiff's neuropathy and considered its impact on plaintiff's ability to work).

In such a situation, the ultimate inquiry is whether substantial evidence supports the RFC fashioned by the ALJ. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). An RFC is an "administrative finding," and the final responsibility for determining an individual's RFC is

reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at * 1–2 (July 2, 1996). The Circuit has explained that "the ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).

　　*2. Plaintiff's Narcolepsy*

Plaintiff correctly notes that the ALJ did not explicitly designate her narcolepsy without cataplexy as a severe impairment, a non-severe impairment, or a non-medically determinable impairment. (Doc. 13 at 6 (citing Tr. 25)). Yet, the ALJ expressly considered that impairment and its effect on her ability to work.

First the ALJ noted a moderate limitation in Plaintiff's concentration, due in part to her own testimony regarding "issues with concentration due to her narcolepsy." (Tr. 26). Then, when making his RFC determination, the ALJ acknowledged Plaintiff's testimony that: narcolepsy limited her ability to work; she considered it one of the "two main issues" that kept her from working; it caused her "brain fog, sleepiness, and tiredness;" frustrated her; affected her focus and memory; and she took medication to "help with her brain fog[,]" without which "she could not function." (Tr. 27–28 (summarizing Plaintiff's testimony from hearing)).

The ALJ also took notice of Plaintiff's medical records related to her narcolepsy without cataplexy, beginning with her 2014 diagnosis and treatment at the Department of Sleep Medicine at OSU Wexner Medical Center. (Tr. 29 (citing Tr. 651 ("[Balsley] has narcolepsy without cataplexy. . . . [S]he is doing better on [N]uvigil. She feels more alert."))). The ALJ also summarized the medical records for several follow-up appointments. In April 2015, Plaintiff reported to her physician that she was doing well on her narcolepsy medication if she was getting adequate sleep and was maintaining better alertness. (Tr. 29 (citing Tr. 653, 654 ("Balsley says

7

she is doing fairly well on [N]uvigil.  She is maintaining better alertness.))).  In February 2016, Plaintiff was maintaining alertness on her medication without side effects and continued to report doing well.  (Tr. 29 (citing Tr. 656 ("Balsley says she is doing well.  She is maintaining alertness on [N]uvigil without side effects."))).  In February 2017, she reported increased stress and tiredness after getting a new house and was continued on her medication.  (Tr. 29 (citing Tr. 662 ("Balsley says she is doing ok.  She is more tired and has more restless sleep.  She has increased stress as well. . . . [Patient] having more stress recently after getting a new house.  Since then [patient] is more tired."))).  And in October 2019, Plaintiff was continued on her medication.  (Tr. 29 (citing Tr. 1073 ("She will continue on Nuvigil 150mg every morning upon waking."))).

To the extent that Plaintiff identifies additional treatment notes related to her narcolepsy in the record, none reveal different information. (Doc. 13 at 7–8 (citing Tr. 761, 1254, 1262, 1265, 1269, 1283)).  Rather, they merely reiterate that Plaintiff: had a diagnosis of narcolepsy without cataplexy (Tr. 761, 1254, 1262, 1265, 1269, 1283); was regularly continued on her prescription for Nuvigil (Tr. 761, 1254, 1262, 1265, 1269, 1283); and complained of tiredness and restless sleep (Tr. 761).  In short, Plaintiff has identified no record of importance that the ALJ failed to address.

Ultimately, regardless of whether the ALJ explicitly designated her narcolepsy without cataplexy as a medically determinable or severe impairment, the ALJ considered the impairment when assessing the medical evidence and deciding how her impairments impacted her ability to work.  And that is all the ALJ is required to do.

Additionally, courts have determined that when the RFC analysis considers all of plaintiff's impairments, a failure to categorize a particular impairment as severe or non-severe is harmless. *King v. Comm'r of Soc. Sec.*, No. 2:15-CV-2225, 2016 WL 3437379, at *4 (S.D. Ohio June 22, 2016), *report and recommendation adopted,* No. 2:15-CV-2225, 2016 WL 3689898 (S.D. Ohio

8

July 12, 2016). Courts can and should engage in the harmless-error analysis, especially when the Commissioner makes the argument, as he has here. (Doc. 17 at 11); *see, e.g.*, *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) ("When 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game.'" (quoting *Nat'l Labor Relations Bd. v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969)); *id.* (citing *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.")). So, to the extent the ALJ failed to explicitly classify Plaintiff's narcolepsy as a severe, a non-severe, or a non-medically determinable impairment, any such error was harmless. Plaintiff has not shown that the ALJ failed to consider her narcolepsy's impact on her ability to work; she has failed to show reversible error.

At base, Plaintiff wishes "the ALJ had interpreted the evidence differently." *Glasgow v. Comm'r of Soc. Sec.*, No. 2:15-CV-1831, 2016 WL 2935666, at *7 (S.D. Ohio May 20, 2016), *report and recommendation adopted*, No. 2:15-CV-01831, 2016 WL 4486936 (S.D. Ohio Aug. 26, 2016), *aff'd*, 690 F. App'x 385 (6th Cir. 2017). But the law prohibits the Court from reweighing the evidence and substituting its judgment for that of the ALJ. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.")). In sum, because the ALJ expressly considered Plaintiff's narcolepsy and its impact on her ability to work, the ALJ's RFC finding is supported by substantial evidence.

**IV.    CONCLUSION**

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 13) and **AFFIRM** the Commissioner's decision.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have a District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date: August 19, 2021    /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE